1

2

3                                                            O

4

5

6

7

8                   UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11  FINN PETTE, et al.,           )  Case No. CV 12-09324 DDP (PJWx)
                                  )
12                Plaintiff,      )
                                  )  **ORDER GRANTING MOTIONS TO DISMISS**
13       v.                       )
                                  )
14  INTERNATIONAL UNION OF        )
    OPERATING ENGINEERS, a trade  )  [Dkt. Nos. 83, 84, 87, 88, 91,
15  union, etc., et al.,          )  92]
                                  )
16                Defendants.     )
    _____)
17

18       Presently before the court are five motions to dismiss filed

19  by several, but not all, of the dozens of defendants in this

20  matter.  Having considered the submissions of the parties and heard

21  oral argument, the court grants the motions and adopts the

22  following order.

23  **I.   Background**

24       Plaintiffs are current and former members and officers of

25  Local 501 of the International Union of Operating Engineers ("Local

26  501").  Local 501 represents operating engineers throughout

27  Southern California and Southern Nevada. In their Second Amended

28  Complaint ("SAC"), Plaintiffs bring eight claims against 43

Defendants, including four claims for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C §1961 *et seq.*, a violation of the Labor-Management Reporting and Disclosure Act ("LMRDA") 29 U.S.C. §401 *et seq.*, a breach of fiduciary duties under §502(a)(2), 29 U.S.C. § 1132(a)(2) of the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. §1002 *et seq.*, and aiding and abetting.

Plaintiffs assert that Defendants International Union of Operating Engineers ("IUOE"), 24 associated individuals, Able Engineering Services ("Able"), its CEO Paul Bensi, ABM Engineering Services ("ABM"), its President Jim Scranton, and its employee Cornell Sneeks (collectively, "Moving Defendants") conspired to embezzle funds and divert assets belonging to Local 501, its employees, and its benefit funds.

Defendant IUOE is a trade union that represents operating engineers in the construction industry and stationary engineers in the service industry. (SAC ¶ 26 at 5.) Local 501 is a stationary local of IUOE. (Id.) Plaintiffs allege IUOE participated in embezzlement schemes with Able Defendants and ABM Defendants to avoid required payments to Local 501 and its benefit funds. The SAC alleges Defendant Vincent Giblin, the former General President of IUOE, threatened to remove Plaintiff Pette and other Local 501 officials from their officer positions (SAC ¶ 101, 108-23, 187-96), prevented Local 501 leadership from investigating diversion of assets (Id.), required local union officers to contribute hundreds and thousands of dollars per year to IUOE's political action fund (Id. ¶ 75-80), and forced local unions to use CVS Caremark ("Caremark") for prescription and benefit management. The SAC also

1   alleges Defendant James T. Callahan, the current IUOE president,

2   continues these practices. (Id. ¶¶ 196, 202-04) Plaintiffs further

3   allege that IUOE retained Defendant James Zazzali, a retired New

4   Jersey Supreme Court Chief Justice and current IUOE Ethics Officer,

5   to bolster false ethics charges. According to the SAC, all IUOE

6   Defendants received kickbacks. (Id. ¶ 1, 166, 168, 190, 232.)

7        Defendant Able is an employer that provides onsite stationary

8   engineering and facility maintenance services to hotels and other

9   real estate assets thought the United States. (Able Motion to

10  Dismiss Plaintiffs' SAC at 1.) Able and Local 501 have a

11  collective bargaining agreement ("CBA") that governs the terms and

12  conditions of Able's employment of Local 501 members. (Id.)

13  Defendant ABM is a signatory to contracts with IUOE local unions

14  and controls 70% of stationary engineering positions in California.

15  (SAC ¶ 155.) ABM's contracts with Local 501 require that any

16  building unionized through Local 501 must remain unionized in

17  subsequent labor contracts. (Id.)

18       Plaintiffs assert Able and ABM breached union contracts by

19  conspiring with IUOE to operate double-breasted (side by side

20  operation of union and non-union workforces) (SAC, ¶¶ 112, 166,

21  168-71), failing to make required benefit contributions to various

22  union funds as required by the companies' CBA (Id. at ¶¶ 112, 154,

23  156, 158-60), shorting and concealing underpayments to the Health

24  and Welfare fund and the Apprenticeship Fund by employing retired

25  workers (Id. at ¶¶ 154, 157, 163, 172-5), using influence to

26  prevent audits (Id. at ¶¶ 154-58), impeding fair union elections by

27  blocking electioneering emails to union members from 'resistance'

28  candidates, while permitting through their mail services

1    electioneering emails sent on behalf of candidates approved by IUOE

2    (Id. at 197, 249), and retaliating against Plaintiffs because of

3    their union activities (Id. at 247). Plaintiffs also allege

4    Defendant ABM targeted Local 501 employees sympathetic to

5    Plaintiffs' lawsuit. (Id. ¶ 247). Lastly, Plaintiffs assert that

6    ABM and Able conspired and aided and abetted "fraudulent schemes"

7    that were part of an overarching scheme to defraud Local 501.

8    Defendants now move to dismiss claims one through seven.[1] [2]

9    **II.  Legal Standard**

10        A complaint will survive a motion to dismiss when it contains

11   "sufficient factual matter, accepted as true, to state a claim to

12   relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S.

13   662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,

14   570 (2007)).  When considering a Rule 12(b)(6) motion, a court must

15   "accept as true all allegations of material fact and must construe

16   those facts in the light most favorable to the plaintiff." Resnick

17   v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000).  Although a complaint

18   need not include "detailed factual allegations," it must offer

19   "more than an unadorned, the-defendant-unlawfully-harmed-me

20   accusation." Iqbal, 556 U.S. at 678.  Conclusory allegations or

21   allegations that are no more than a statement of a legal conclusion

22   "are not entitled to the assumption of truth." Id. at 679.   In

23   other words, a pleading that merely offers "labels and

24

25        [1] Defendants ABM, Scranton, and Sneeks also join in Able and
26   the IUOE's motions.

27        [2] Though no Defendant has moved to dismiss Plaintiffs' eight
     cause of action for unfair competition under California Business &
28   Professions Code § 17200, Plaintiffs have expressed a desire to
     amend that cause of action.

1  conclusions," a "formulaic recitation of the elements," or "naked
2  assertions" will not be sufficient to state a claim upon which
3  relief can be granted.  <u>Id.</u> at 678 (citations and internal
4  quotation marks omitted).

5      "When there are well-pleaded factual allegations, a court should
6  assume their veracity and then determine whether they plausibly
7  give rise to an entitlement of relief." <u>Id.</u> at 679.  Plaintiffs
8  must allege "plausible grounds to infer" that their claims rise
9  "above the speculative level." <u>Twombly</u>, 550 U.S. at 555.
10 "Determining whether a complaint states a plausible claim for
11 relief" is a "context-specific task that requires the reviewing
12 court to draw on its judicial experience and common sense." <u>Iqbal</u>,
13 556 U.S. at 679.

14 **III. Discussion**

15      A.   RICO claims

16      Defendants contend that Plaintiffs lack standing to bring RICO
17 claims under 18 U.S.C. § 1961.  RICO provides a private cause of
18 action to "[a]ny person injured in his business or property by
19 reason of a violation" of the RICO statute. 18 U.S.C. § 1964(c). To
20 establish statutory standing, therefore, a plaintiff must show that
21 the RICO violation "proximately caused an injury to his business or
22 property." <u>Canyon County v. Syngenta Seeds, Inc</u>., 519 F.3d 969,
23 972 (9th Cir.2008).  Moreover, the injury must constitute a
24 "concrete financial loss." <u>Id</u>. at 975; <u>Diaz v. Gates</u>, 420 F.3d
25 897, 898-900 (9th Cir. 2005).

26      Plaintiffs contend that they have adequately pled concrete
27 financial injury to business or property because the SAC alleges
28 that Local 501 and ERISA funds suffered monetary losses.  (e.g.

1   Opp., Dkt. No. 125 at 13-14.)   For example, Plaintiffs allege that

2   IUOE, Able, and ABM conspired to deprive Local 501's Apprenticeship

3   Fund, Health & Welfare Fund, and General Welfare Fund of mandatory

4   contributions.   (SAC ¶¶ 157-162.)   The SAC further alleges that

5   these contribution shortfalls "harmed Local 501's ability to

6   operate." (Id. ¶ 162.)

7        Plaintiffs' allegations are, however, insufficient for two

8   reasons.   First, Section 1964(c) requires that a plaintiff suffer

9   damage to "his business or property." 18 U.S.C. § 1964(c) (emphasis

10  added); Sparling v. Hoffman Const. Co., 864 F. 2d 635, 640-41 (9th

11  Cir. 1988) (shareholders lacked RICO standing because their

12  injuries derived from injury to the corporation); Adams-Lundy v.

13  Ass'n of Prof'l Flight Attendants, 844 F.2d 245, 250 (5th Cir.

14  1988) (union members lacked RICO standing where "financial

15  improprieties occurred with union funds and directly injured solely

16  the union."); United Bhd. Of Carpenters and Joiners of Am. v. Bldg.

17  and Constr. Trades Dep't, 911 F.Supp.2d 1118, 1124-26 (E.D. Wash.

18  2012)(finding standing lacking where damaged property did not

19  belong to any named plaintiff).   Here, Plaintiffs are sixteen

20  individuals, and bring purported class claims on behalf of other

21  individuals.[3]   The injuries alleged, however, inhere to Local 501

22  and its ERISA funds, none of which is a named plaintiff in this

23  case.

24

25  _____

26       [3] While the SAC does include some allegations that certain
    individual Plaintiffs were improperly terminated or otherwise
27  deprived of certain employment opportunities in 2009 and 2010 (e.g.
    ¶¶ 119, 138, 140, 185), those individual Plaintiffs explicitly
28  limit their claims to events occurring on or after May 1, 2012.
    (SAC ¶¶ 9-10.)

1   Second, and on a related note, there must be a "direct
2   relationship" between the injury and the alleged racketeering
3   activities.  Hemi Group, LLC v. City of New York, 559 U.S. 1, 9
4   (2010); United Bhd. Of Carpenters; 911 F.Supp.2d at 1125-26.
5   Plaintiffs, however, at best allege only indirect injury to
6   themselves.  For instance, the SAC alleges that withheld health
7   fund payments "would have, had they been paid, provided for payment
8   of benefits in future years . . . .  By underfunding the Health &
9   Welfare Fund, Able and ABM deprived Local 501 members of this
10  supplemental benefit cushion."  (SAC ¶ 160.)  Any such harm,
11  however, would necessarily flow from the earlier injury to the
12  Health & Welfare Fund.  As the Ninth Circuit has recognized,
13  "plaintiffs who have suffered 'passed on' injury - that is, injury
14  derived from a third party's direct injury - lack statutory
15  standing."  Mendoza v. Zirkle Fruit Co., 301 F.3d 1163, 1169 (9th
16  Cir. 2002).[4]

17      The various racketeering acts alleged in the SAC harmed Local
18  501 and its benefit funds, not Plaintiffs.  Even if Plaintiffs had
19  identified any non-speculative injury to themselves, any such harm
20  would be the indirect result of direct injuries to the nonparty
21  union and plans.  Thus, Plaintiffs cannot satisfy 18 U.S.C. §
22  1964(c), and lack statutory standing to bring their RICO claims.

23      B.   LMRDA claim

24

25

26      [4] Even if Plaintiffs' alleged injuries were sufficiently
27  direct, they are nevertheless fatally speculative.  See Steele v.
    Hosp. Corp. of Am., 36 F.3d 69, 71 (9th Cir. 1994) (holding no RICO
28  standing where alleged depletion of insurance benefits had not yet
    required plaintiff to incur any expense.)

1    Title I of the LMRDA provides union members with a "Bill of
2    Rights" designed to guarantee members' ability to participate in
3    union decisions and to protect members' freedoms of speech and
4    assembly.  <u>Local No. 82 Furniture & Piano Moving, Furniture Store</u>
5    <u>Drivers, Helpers, Warehousemen, & Packers v. Crowley</u>, 467 U.S. 526,
6    536 (1984).  The LMRDA states, in relevant part, that "[e]very
7    member of a labor organization shall have equal rights . . . to
8    attend membership meetings, and to participate in the deliberations
9    and voting upon the business of such meetings."  29 U.S.C.
10   §411(a)(1).  Union members also "have the right to meet and
11   assemble freely with other members; and to express any views
12   arguments, or opinions."  29 U.S.C. § 411(a)(2).

13       Plaintiffs contend that the IUOE Defendants, "through their
14   schemes to usurp control of Local 501 [. . .], deprived Plaintiffs
15   of their right to freely meet and assemble to express their views
16   (Able and ABM used managerial employees to intimidate members, and
17   the IUOE, which now controls Local 501, does nothing to stop it)."
18   (Opp., Dkt. No. 125 at 24.)  Plaintiffs do not identify where in
19   their 119-page complaint these allegations lie.  The SAC does make
20   reference to potentially intimidating conduct by ABM and Able, but
21   the majority of these allegations relate to claims which Plaintiffs
22   concede are moot.  (See, e.g., SAC ¶¶ 197, 249.)  The only other
23   allegation seeming to fit Plaintiffs' description asserts that an
24   ABM vice president took pictures of certain unnamed Local 501
25   members in December 2012.  (SAC ¶ 248.)

26       A generous reading of Plaintiffs' submissions suggests that
27   Plaintiffs intend to allege that the IUOE Defendants ratified some
28   sort of activity undertaken by Local 501, perhaps in collusion with

ABM and Able, in violation of Section 101(a) of the LMRDA.  In some cases, international unions may be held liable for the actions of a local.  <u>See</u> <u>Moore v. Local Union 569 of Int'l Bh'd of Elec.</u> <u>Workers</u>, 989 F.2d 1534, 1543 (holding international liable for local's illegal actions only if it ratified such actions knowing that the local intended to suppress dissent); <u>Chapa v. Local 18</u>, 737 F.2d 929, 932 (5th Cir. 1984).  The only paragraph seeming to relate to Plaintiffs' Title I allegation, however, refers only to activity by an ABM employee, without any description of any improper conduct by Local 501, let alone knowledge or approval of IUOE.  Plaintiffs' LMRDA claim is therefore dismissed with leave to amend.  <u>See</u> Fed. R. Civ. P. 8(a).

C.  Breach of Fiduciary Duty

Plaintiffs' Sixth Claim for Breach of Fiduciary Duties Under ERISA or Common law fails to provide a plain statement of the claim, and is little more than a bare recitation of the elements of the claim.  Plaintiffs assert the claim "Against Specific Defendants," but do not further identify any defendant beyond the conclusory assertion that "Defendants identified herein as Administrators and/or Trustees and/or IUOE executives and/or Local Executives have assumed fiduciary obligations to Plaintiffs."  SAC ¶ 344.  Moreover, nowhere does the SAC identify any ERISA plan to which any administrator or trustee or executive owed a fiduciary duty.  While the SAC does state that Plaintiffs are beneficiaries of a General Pension Fund plan, Health and Welfare Fund plan, and Operating Engineers Trusts, "among others," it does not state whether one or multiple defendants breached duties to one, two, or

1  all of the named or unnamed plans.  The claim is, therefore,

2  dismissed.  Fed. R. Civ. P. 8(a); <u>Iqbal</u>, 556 U.S. at 678.

3       D.   Aiding and Abetting

4       "Congress has not enacted a civil aiding and abetting

5  statute."  <u>Central Bank of Denver, N.A. v. First Interstate Bank of</u>

6  <u>Denver, N.A.</u>, 511 U.S. 164, 182 (1994).  Aiding and abetting

7  liability is therefore limited to those statutes in which it is

8  imposed.  <u>Id.</u>, <u>Freeman v. DirecTV, Inc.</u>, 457 F.3d 1001, 1006 (9th

9  Cir. 2006); <u>In re Easysaver Rewards Litigation</u>, 737 F.Supp.2d 1159,

10 1181 (S.D. Cal. 2010).  Plaintiffs' Aiding and Abetting claim is

11 dismissed with prejudice.

12 **IV.  Conclusion**

13      For the reasons stated above, Defendants' Motions are GRANTED.

14 Plaintiffs' RICO claims (Claims 1-4) and Seventh Claim for Aiding

15 and Abetting are dismissed with prejudice.  Plaintiffs' Fifth Claim

16 for violation of the LMRDA and Sixth Claim for Breach of Fiduciary

17 Duty are dismissed with leave to amend.  Any amended complaint

18 shall be filed within fourteen days of the date of this order.[5]

19

20

21 IT IS SO ORDERED.

22 Dated: October 9, 2013

                                        DEAN D. PREGERSON
23                                      United States District Judge

24

25

26

27 _____
        [5] Any amended complaint shall also include amendments to
28 Plaintiffs' unfair competition claim, to which no Defendant appears
   to object.